MARY J. BRUNO vs. ROBERT E. BRUNO & another.[1]

Worcester. April 9, 1981. — July 7, 1981.

Present: HENNESSEY, C.J., BRAUCHER, WILKINS, LIACOS, & NOLAN, JJ.

*Undue Influence. Rules of Civil Procedure. Practice, Civil,* Findings by
judge, Appeal.

In an action by an elderly plaintiff seeking a determination that a deed ex-
ecuted by her which conveyed her property to her nephew and his wife
was null and void, neither the judge's findings of fact nor additional
facts found by this court to be warranted by the evidence and not in
conflict with the judge's findings supported his conclusion that the
deed was procured by undue influence. [32-37]

CIVIL ACTION commenced in the Worcester Division of
the Probate and Family Court Department on Novem-
ber 30, 1978.

The case was heard by *McLellan*, J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Joseph C. Cove* for the defendants.

*C.A. Peairs* for the plaintiff.

WILKINS, J. On January 10, 1977, the plaintiff, then
ninety-nine years old, executed a deed conveying certain
property in the town of Douglas to her nephew and his
wife, the defendants. The plaintiff commenced this action
in the Probate Court for Worcester County, seeking a deter-
mination that the deed was null and void and a judgment
directing a reconveyance of the property. The judge con-
cluded that the deed was procured by undue influence and
declared the deed to be void.[2] The Appeals Court conclud-

---

[1] Doris E. Bruno.

[2] He also ordered that the plaintiff pay $2,500 to the defendants, repre-
senting the value of certain improvements the defendants had made on

ed, on the defendants' appeal, that the judge's subsidiary findings did not warrant his ultimate finding that the deed to the property had been procured by undue influence. *Bruno* v. *Bruno,* 10 Mass. App. Ct. 918 (1980). We granted the plaintiff's application for further appellate review and now express our agreement with the Appeals Court's conclusion. We also consider the plaintiff's argument that we may look to facts not found by the judge which, it is said, were warranted by the evidence and support the judge's ultimate finding of undue influence. We conclude that, even considering certain additional facts, undue influence was not established.

The facts found by the judge did not warrant his finding that the deed was procured by undue influence. He found that Robert, the nephew, had a close family relationship with the plaintiff. At the time of the conveyance, the plaintiff was keeping her own house, was able to take care of herself in all the ways that implies, and was not dependent on others for her livelihood. In late November, 1976, the plaintiff approached Robert and asked him if he would be interested in purchasing the property for $5,000, a price Robert had offered her many years previously and which, at that time, had been the fair market value of the property. Robert retained an attorney who prepared a deed. Together they visited the plaintiff on January 10, 1977. The attorney explained the deed and its consequences to the plaintiff. She was then of sound mind. She did not, however, understand the nature and consequences of her signature on the deed. Robert paid the local real estate taxes on the property for 1977 and 1978.

The judge concluded that, as a result of the plaintiff's advanced age, "a most subtle kind of undue influence was suf-

---

the property. The complaint did not expressly seek, as an alternative remedy, payment of the $5,000 unpaid purchase price for the property.

By counterclaim, the defendants sought payment for improvements made by them to the property and to apartments occupied by the plaintiff. The evidence did not warrant a finding that the plaintiff had an obligation to compensate the defendants for these improvements.

ficient to overcome the plaintiff's will and that said undue influence in fact was carried out by the defendant," but without any malice. He further concluded that because of the plaintiff's advanced age, Robert, and perhaps his attorney, should have dealt "with the plaintiff with extraordinary care taking substantial steps in order to insure the fact that the plaintiff knew the full consequences of her act."

We agree with the conclusions of the Appeals Court, based on ample citation of authority unnecessary to repeat, that (1) the deed was valid unless it was procured by fraud or undue influence and (2) the plaintiff's advanced age (in light of her soundness of mind) and her lack of legal representation did not alone make out a case of undue influence. There was no evidence that the defendants exercised any influence over the plaintiff. She initiated the conveyance and selected the price. The factors present in this case "may suggest that the [plaintiff] was susceptible to influence but they show neither 'the fact of . . . improper influence exerted' nor 'submission to the overmastering effect of such unlawful conduct.' *Neill* v. *Brackett,* 234 Mass. 367, 370 [1920]." *O'Brien* v. *Wellesley College,* 346 Mass. 162, 172 (1963). Compare the *O'Brien* case and *Miles* v. *Caples,* 362 Mass. 107, 113 (1972), with *Popko* v. *Janik,* 341 Mass. 212, 215 (1960), *Reilly* v. *McAuliffe,* 331 Mass. 144, 148-149 (1954), *McDonald* v. *MacNeil,* 300 Mass. 350, 352-353 (1938), and *Eddy* v. *Eddy,* 281 Mass. 156, 163-164 (1932).

We further agree with the Appeals Court that the defendants did not owe any greater duty to the plaintiff because of their relationship. The plaintiff was not dependent on either or both of the defendants in personal or business affairs. No fiduciary relationship or relationship of trust and confidence was found or shown on the evidence. Robert saw the plaintiff two or three times a year. There may have been a relationship of mutual regard, but mere respect for the judgment of another or trust in his character is not enough to constitute a confidential relationship. *Meskell* v. *Meskell,* 355 Mass. 148, 151 (1969). *Comstock* v. *Livingston,* 210 Mass. 581, 584 (1912). Contrast the present case

with *Samia* v. *Central Oil Co.*, 339 Mass. 101, 112 (1959), *Stetson* v. *French*, 321 Mass. 195, 199-200 (1947), and *Hawkes* v. *Lackey*, 207 Mass. 424, 431-432 (1911).

We believe that principles of law established by our cases concerning undue influence are substantially in accord with those set forth in Restatement (Second) of Contracts § 319 (1) (Tent. Draft No. 12, 1977).[3]  Clearly, unfair persuasion of one party under the domination of another constitutes undue influence under the law of Massachusetts.  The definition of undue influence, which appears in the first portion of § 319 (1), is substantially equivalent to the emphasis in our cases on the domination of the will or the destruction of free agency.  See *Surrender of Minor Children*, 344 Mass. 230, 234-235 (1962); *Neill* v. *Brackett*, 234 Mass. 367, 369-370 (1920).

Similarly, the alternative definition of undue influence in the second portion of § 319 (1), which treats undue influence as unfair persuasion facilitated by the relationship of the parties, has a counterpart in our cases treating improper influence in the context of a "confidential relationship." Compare Restatement (Second) of Contracts § 319, Comment a, with *Cann* v. *Barry*, 293 Mass. 313, 316-317 (1936), and *Reed* v. *A.E. Little Co.*, 256 Mass. 442, 448-449 (1926).[4]  Thus, unfair persuasion in the context of a confidential relationship constitutes undue influence in Massa-

---

[3] "§ 319.  WHEN UNDUE INFLUENCE MAKES A CONTRACT VOIDABLE.

(1) Undue influence is unfair persuasion of a party who is under the domination of the person exercising the persuasion or who, by virtue of the relation between them, is justified in assuming that that person will not act in a manner inconsistent with his welfare."  This section of the Restatement is to be renumbered § 177 (1) when Restatement (Second) of Contracts is published, probably in 1981.

[4] Courts in other jurisdictions have interpreted the relationship described in the antecedent of § 319 (1) (Restatement of Contracts § 497 [1932]) to be the equivalent of a confidential relationship.  See *Williams* v. *Moran*, 248 Md. 279, 289 (1967); *Ireland* v. *Charlesworth*, 98 N.W.2d 224, 236-237 (N.D. 1959); *Egr* v. *Egr*, 170 Or. 1, 7-8 (1942); *Davies* v. *Toms*, 75 S.D. 273, 281 (1954); *Kuehn* v. *Kuehn*, 11 Wis. 2d 15, 24 (1960).

chusetts. See *Tarricone* v. *Cummings,* 340 Mass. 758, 762-763 (1960), and cases cited; *Eddy* v. *Eddy,* 281 Mass. 156, 160-162 (1932); *Neill* v. *Brackett, supra* at 369.

Where, as we have concluded, the findings of fact made by the judge do not support his conclusions of law, the question arises whether an appellate court can make its own findings, and, perhaps as a result of doing so, arrive at factual conclusions which support the judge's conclusions of law. If a judge has made findings of fact, an appellate court may not treat the judgment as importing a finding of all facts, open on the evidence, needed to support the judgment. Massachusetts R. Civ. P. 52 (a), 365 Mass. 816 (1974), requires the judge to make findings of fact.[5] Of course, where stipulated or where documentary facts are not expressly adopted in the findings of the judge, an appellate court has no difficulty in considering those facts. See *Wilson, petitioner,* 372 Mass. 325, 330 (1977). The same may be said concerning facts that are not contested and appear clearly established on the record. Beyond these circumstances, our practice before the adoption of the Massachusetts Rules of Civil Procedure was to permit an appellate court to make additional findings, not in conflict with the judge's permissible findings.[6] The Appeals Court has treated the Rules of Civil Procedure as making no change in this former practice. *Zuckerman* v. *Blakeley,* 3 Mass. App. Ct. 685, 686-687 (1975). See *Hutchinson* v. *Hutchinson,* 6 Mass. App. Ct. 705, 707-708 (1978); *Nickerson* v. *Fiduciary Trust Co.,* 6 Mass. App. Ct. 317, 318 (1978). Although this

---

[5] Under our practice prior to the effective date of our Rules of Civil Procedure, where a report of material facts was filed, an appellate court would not treat a decree as importing the finding of facts necessary to support that decree. *Paone* v. *Gerrig,* 362 Mass. 757, 759 n.5 (1973).

[6] The previous standard is stated in *Hanrihan* v. *Hanrihan,* 342 Mass. 559, 564 (1961): "[O]ur duty is to examine the evidence and decide the case according to our own judgment, accepting the findings of the trial judge, whether based wholly or partly upon oral testimony, as true, unless they are shown to be plainly wrong, and finding for ourselves such other and additional facts as we deem to be justified by the evidence." See *Bartevian* v. *Cullen,* 369 Mass. 819, 820 n.1 (1976).

court has not directly addressed the question, it has accepted by inference the principle that the former practice is appropriate under the Rules of Civil Procedure (see *Building Inspector of Lancaster* v. *Sanderson*, 372 Mass. 157, 161 [1977]), and we think the principle is sound. See J.W. Smith & H.B. Zobel, Rules Practice § 52.7, at 248 (1977). Although there may be occasions in which the credibility of witnesses, and especially conflicts in the evidence, will require that a case be remanded for proper findings under Rule 52 (a), that will not be necessary in every case.[7]

Beyond the facts found by the judge, there are certain facts which we may appropriately find. It is clear that the plaintiff was hard of hearing. Her native language was French, and she spoke broken English. We do not find, however, that there was a substantial problem in communicating with her. We infer that the camp was worth more than $5,000 and that the plaintiff knew it. Consistent with the judge's finding that the defendants' attorney explained the consequences of the deed and that the defendant Robert Bruno acted without malice, we find that the defendants made no misrepresentation concerning the deed.

As to other facts that the plaintiff suggests might have been found, some are contested on the record, others are directly or inferentially inconsistent with warranted findings made by the judge, and still others depended on the credibility of witnesses. The findings were made from the bench at the close of the case. Certain matters which might have been dealt with were not mentioned. Although expeditious disposition of contested matters is desirable, there are often situations in which reflection, aided by written requests for findings of fact, is the better course.[8] Because the judge has

[7] The general purpose of rule 52 (a) is (1) to ensure the quality of a judge's decision-making process by requiring simultaneous articulation of the judge's underlying reasoning; (2) to assure the parties that their claims have been fully and fairly considered; and (3) to inform an appellate court of the basis on which a decision has been reached. *Cormier* v. *Carty*, 381 Mass. 234, 236 (1980).

[8] Because the plaintiff was successful at the trial level, it is understandable that she did not seek amended or additional findings, as was her right to do under rule 52 (b).

since resigned from the bench, it is not feasible to remand the matter for further findings. We, therefore, have made further findings that were warranted by the evidence and consistent with the subsidiary findings made by the judge. We conclude that the case for undue influence was not made out. In the language of the Restatement (Second) of Contracts § 319 (1), there was no showing of domination. Nor was there a confidential relationship.

The case must be remanded for consideration of the question whether, perhaps on amendment of the complaint, judgment should be entered for the amount of the purchase price which, at the time of trial, had not been paid. There was no evidence warranting a finding for the defendants on their counterclaim. The judgment is reversed. Further proceedings shall take place in the Probate Court consistent with this opinion. Neither party shall have the costs of appeal.

*So ordered.*