Curran, Dennis J., J.
INTRODUCTION
Kevin M. Plante sued his former employer, Hinckley, Allen & Snyder, LLP (Hinckley Allen), for wrongful termination. Hinckley Allen counterclaimed. The matter is currently before the court on three motions: (1) Hinckley Allen’s motion for summary judgment on the separation agreement and release (paper no. 65); (2) Hinckley Allen’s motion to strike evidence relied upon in Plante’s opposition to its motion for summary judgment (paper no. 67); and Plante’s motion to dismiss the counterclaim (paper no. 59). For the reasons explained below, both of Hinckley Allen’s motions are ALLOWED in part and DENIED in part. Plante’s motion is DENIED.
BACKGROUND
Regarding the motions to strike and for summary judgment, the summary judgment record sets forth the following facts, drawing all reasonable inferences in a light most favorable to the non-moving plaintiff.
Hinckley Allen hired Plante to work as a senior associate in its litigation group in November 2004. In March 2005, four Hinckley Allen partners asked Plante to look at images that had been downloaded from a client’s computers during a discovery production to determine whether the images were pornographic. If Plante found them to be pornographic, then he was instructed to determine what steps the firm should take. Plante informed the partners that the images were pornography and that the firm was required to report the images to the relevant authorities. Hinckley Allen retained the images until May 2005, when Hinckley Allen partners asked Plante to arrange for the images’ complete erasure. Nonetheless, Plante continued encouraging the partners to report the images fearing that the delay constituted an additional criminal violation. Plante claims that he was “highly stressed by the conflict between the partners’ request and (his) reticence regarding their request.”
On November 9, 2005, Plante had lunch with Dr. Robert Smith at the latter’s invitation. He informed Plante that various partners at the firm had wanted the two to meet. Plante perceived their lunch to be a psychological assessment, and Dr. Smith eventually admitted that its purpose was to assess Plante’s mental health.
On January 20, 2006, attorney William Grimm, a Hinckley Allen partner, informed Plante that the firm was terminating his employment. Plante requested a sick leave, which Grimm denied. Plante claims that he was stunned by the termination. After escorting Plante back to his office that day, Grimm observed him crying when talking to a friend over the telephone.
Grimm requested that Plante not contact anyone at the firm, although Plante said that he wanted to maintain his friendship with a partner, Paul O’Donnell. Grimm said this would be acceptable.
Plante and O’Donnell had been friends for many years. They met in a recovery program, and it was at O’Donnell’s urging that Plante applied to work at Hinckley Allen. At some point after his termination from Hinckley Allen, Plante informed O’Donnell that he was “depressed and shattered” and that he planned to enter in-patient psychiatric treatment.
After Plante left Hinckley Allen, Grimm spoke with Plante and offered a separation agreement. Consequently, Grimm forwarded a proposed separation agreement and release to Plante asking him to execute and return it if the agreement was satisfactory. The letter did not impose any deadline. Approximately three days later, Plante returned the agreement, but signed on the line intended for Hinckley Allen’s authorized representative. Plante claims that he does not remember signing the agreement or whether anyone witnessed it. He further claims that he signed it only because of O’Donnell’s urging. On February 7, 2006, Plante signed the agreement on the correct line. The next day Grimm signed it on behalf of Hinckley Allen and returned it, along with a check for unused vacation time, to Plante. The agreement also provided for four months’ severance pay.
On February 9, Plante went to the emergency unit at Massachusetts General Hospital. That day, after a psychiatric evaluation, he was transferred to the acute psychiatric ward of MGH for in-patient treatment. For the following twelve days, Plante was treated in the acute psychiatric ward for depression, suicidal and homicidal ideation, impulse control disorder, personality disorder, paranoid personality traits, idiopathic hypersomnia, and medication-induced tremor. Plante was discharged on February 21, 2006 and transferred to McLean Hospital Partial Hospitalization Program on February 22. There, he was diagnosed with and treated for depression; suicidal and homicidal ide-ation, paranoid ideation, and employment stress. He was discharged from McLean, after some improvement, on March 31, 2006.
On April 17, 2006, Plante wrote Grimm attempting to rescind the agreement and requesting that Hinckley Allen not send further paychecks; Hinckley Allen declined. Over the subsequent months, Plante sent Hinckley Allen two checks attempting to repay his severance and rescind the agreement. Hinckley Allen refused to accept the checks, voided them, and returned them to Plante. Plante has since put $4,500 in an escrow account for Hinkley Allen.
From June 16, 2006 to December 22, 2006, at the request of his then-attorney, Plante underwent psy-chodiagnostic evaluation by Eric L. Brown, Psy.D. Dr. *265 Brown concluded that, at the time of his termination and subsequent signing of the agreement, Plante “could not intelligently evaluate [the agreement’s] merits due to his unraveling mental status and acute psychological instability.”
Plante filed suit against Hinckley Allen on December 20, 2006. The focus of this memorandum is his count is for wrongful termination, his only remaining count.
After various motions and appeals, Hinckley Allen filed its counterclaim on June 16, 2010 in four counts: breach of the separation agreement and release (count I); intentional misrepresentation and negligent misrepresentation (counts II and III) regarding statements Plante made in his employment application; and breach of Hinckley Allen’s privilege policy (count IV). Additional facts regarding the counterclaims are stated below.
DISCUSSION
I. Motion to Strike
In support of its motion to strike, Hinckley Allen argues the evidence relied upon by Plante does not meet the mandatory admissibility requirements set forth in Mass.R.Civ.P. 56(e). Plante responds that his claims are supported by reliable and admissible evidence, and in particular, that Hinckley Allen “provided non-hearsay statements, which are relevant, consistent with his deposition testimony, and supported by the record.” The court addresses each of the contested pieces of evidence below.
A. Plante’s Medical Records
Exhibits C, D, E, and F attached to Plante’s affidavit are medical records from Massachusetts General Hospital and/or McLean Hospital. Hinckley Allen argues these medical records, and any portion of Plante’s Superior Court Rule 9A(b)(5) response that relies upon, summarizes, or quotes them, should be stricken because the medical records are not sworn or certified in accordance with either Mass.R.Civ.P. 56(e) or G.L.c. 233, §79G. Plante served Hinckley Allen with the medical records on August 17, 2010. At that time, Plante was still in the process of obtaining certifications from MGH and McLean. The medical records from MGH were certified on September 2, 2010, and from McLean, on September 3, 2010. Since Hinckley Allen did not file its motion for summary judgment until September 27, 2010, the court concludes the certification of the medical records was timely. For this reason, Hinckley Allen’s motion to strike will be DENIED as to Plante’s certified medical records.
B. The Dr. Brown Evaluation
Exhibit I attached to the Plante affidavit is a psy-chodiagnostic evaluation of Plante by Dr. Brown. Hinckley Allen argues the Dr. Brown Evaluation, and any statements that rely upon it or its contents, should be stricken because: (1) “[it] contains insufficient information for [the] [c]ourt to conclude that [Dr.] Brown qualifies as an expert in the topic areas in which he gives an opinion”; and (2) the Brown Evaluation is “unreliable.” Plante contends there is more than sufficient information from which the court can qualify Dr. Brown as an expert. Further, Plante asserts that the information contained within the Dr. Brown Evaluation is reliable since he used “standardized psychological testing instruments” that “have been vetted for reliability and validity and are routinely used by mental health providers.”
The court acts as a gatekeeper in determining whether to allow expert testimony by conducting a preliminary assessment of the methodology underlying the expert opinion, and by determining whether the opinion can properly be applied to the facts of the case at bar. Commonwealth v. Lanigan, 419 Mass. 15, 26 (1994), quoting Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592-93 (1993). Nevertheless, “there is a general reluctance to disqualify proffered expert witnesses at the summary judgment stage of the proceedings.” Tabares v. Leach Co., Memorandum and Order on Defendant’s Motion for Summary Judgment, No. 98-105, 2001 WL 1174156, at *1 (Mass.Super.Ct. July 20, 2001) (Houston, J.), citing Cortes Irizarry v. Corporacion Insular De Seguros, 11 F.3d 184, 187-88 (1st Cir. 1997) (“[C]ourts must be cautious—except when defects are obvious on the face of a proffer—not to exclude debatable scientific evidence without affording the proponent of the evidence adequate opportunity to defend its admissibility”). In fact, “[a]t summary judgment . . . courts normally assume that the trier of fact would credit the expert testimony proffered by the nonmovant.” Den Norske Bank AS v. First National Bank of Boston, 75 F.3d 49, 58 (1st Cir. 1996).
Dr. Brown has been a licensed psychologist in Massachusetts since 1983. He has performed psychological evaluations for the Probate and Family, District, and Superior Courts in both civil and criminal matters. He has also served as a Clinical Instructor in Psychology, in the Department of Psychiatry at Harvard Medical School, and published several papers on topics in psychology. Further, while evaluating Plante, Dr. Brown used standardized psychological testing instruments routinely employed by mental health providers to render a medical opinion as to Plante’s psychological state at the time he signed the agreement. The court sees no reason to disqualify him or his opinion at this stage of the litigation. For this reason, Hinckley Allen’s motion to strike Dr. Brown’s evaluation will be DENIED.
C.Opinion Evidence Regarding Plante’s Medical Condition
Hinckley Allen argues that statements in which Plante concludes he was suffering from specific mental illnesses at the time he signed the separation and release agreement should be stricken because Plante, as a layperson, is not allowed to offer “self-serving *266 conclusions regarding his mental capacity.” Plante has replied that he is allowed to testify as to diagnoses supported by his medical records and the conclusions of his expert. Because the court admitted Plante’s medical records and Dr. Brown’s evaluation, both of which support Plante’s statements of diagnoses, the court’s resolution of this issue is largely irrelevant. The court will, therefore, not address the admissibility of each individual statement objected to by Hinckley Allen.
Nevertheless, Hinckley Allen is technically correct. “A layman, where the evidence is material, c[an] be asked to describe facts and circumstances of an ailment ... [b]ut, as a general rule, a lay witness [cannot] state a conclusion such as the name of a disease, particularly one for the diagnosis of which he would not possess the requisite experience.” Commonwealth v. White, 329 Mass. 51, 53-54 (1952) (citations omitted). Plante, as a layperson, can testify as to the symptoms he suffered, but cannot state a conclusion as to what mental illness(es) these symptoms signified. For this reason, Hinckley Allen’s motion to strike will be ALLOWED as to Plante’s statements that state a conclusion as to his specific diagnoses.
D.Hearsay Statements
Hinckley Allen argues that in several instances Plante “repeats or summarizes statements that other individuals made to him” and that these statements should be stricken because they constitute inadmissible hearsay. These alleged hearsay statements include statements by individuals Plante knew through a recovery program, by individuals at hospitals that Plante contacted, by individuals who visited Plante while he was hospitalized, and by Dr. Robert Smith, an independent consultant hired by Hinckley Allen, while Plante was employed with Hinckley Allen, to conduct an evaluation of Plante. Plante contends the statements at issue are not hearsay because they are not offered for the truth of the matter asserted.
A hearsay statement is “a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.” Mass. G. Evid. §801 (2008-2009). Hearsay statements are “generally inadmissible.” Id., §802. To the extent the court considers the statements at issue in deciding the motion for summary judgment, the court accepts Plante’s assertion that these statements are not being offered to prove the truth of the matter asserted. The trial judge will be left to determine, at the time of trial, whether each individual statement objected to by Hinckley Allen constitutes hearsay. For this reason, Hinckley Allen’s motion to strike will be DENIED as to the statements by: (1) individuals Plante was acquainted with from a recovery program; (2) hospital personnel Plante contacted regarding in-patient psychiatric treatment; (3) individuals who visited Plante while he was hospitalized; and (4) Dr. Smith.
E.Inconsistent Statements
Hinckley Allen claims that Plante makes several statements in his affidavit that directly contradict, or are inconsistent with, his previously sworn deposition testimony. It argues these inconsistent statements should be stricken from the record because a party is not permitted to create a disputed issue of fact by filing an affidavit contradicting that party’s own prior deposition testimony. Plante contends the statements in the affidavit do not contradict his deposition testimony; rather, according to him, the statements “add information, which was not requested or considered in his deposition.”
“A party cannot create a disputed issue of fact by the expedient of contradicting by affidavit statements previously made under oath at a deposition.” O’Brien v. Analog Devices, Inc., 34 Mass.App.Ct. 905, 906 (1993). Nevertheless, a motion to strike statements contained within an affidavit, on the basis of inconsistency, will be denied, if, taken in context, the statements are generally consistent with the party’s answers to interrogatories and deposition testimony. See Spence v. Spence, Memorandum of Decision and Order on Defendant’s Motion to Strike and Motion for Summary Judgment, No. 001104, 2001 WL 1174266, at *2 (Mass.Super.Ct. July 16, 2001) (Brassard, J.).
Here, although there are some differences between the statements in the Plante affidavit and his previously sworn deposition testimony, the court concludes that, taken in context, these differences do not, for the most part, amount to contradictions. Examined as a whole, the affidavit is largely consistent with his prior deposition testimony. There is one exception to this conclusion. That exception pertains to the affidavit’s statements which indicate that the change from being fired to being permitted to resign was in quid pro quo for Plante agreeing to sign the separation and release agreement. In his deposition, Plante makes no reference to such a quid pro quo exchange. For this reason, Hinckley Allen’s motion to strike will be ALLOWED only as to the statements contained in the Plante Affidavit that relate to the quid pro quo exchange.
F.Statements that Are Unsupported by the Record
Hinckley Allen contends Plante’s Rule 9A(b)(5) response includes statements of fact not supported by the record and that, as a result, these statements should be stricken from his response. According to Hinckley Allen, the unsupported facts include statements in which Plante indicates: (1) Paul O’Donnell told William Grimm about Plante’s mental illnesses; (2) Grimm encouraged O’Donnell, because of O’Donnell’s friendship with Plante, to advise Plante to sign the separation and release agreement; (3) Plante told O’Donnell he was taking psychotropic medications; and (4) Dr. Robert Smith told the Hinckley Allen’s partners that he believed Plante was “soft.” In *267 response, Plante states he “is permitted to identify inferences created by [Hinckley Allen’s] omission of material facts and to rebut those inferences.” According to Plante, it can be inferred, from facts contained within the record, that Grimm wanted Plante to sign the separation and release agreement and that he encouraged O’Donnell to persuade Plante to sign.
Superior Court Rule 9A(b)(5) states, in pertinent part, that each statement of material fact must be “supported with page or paragraph references to supporting pleadings, depositions, answers to interrogatories responses to requests for admission, affidavits, or other evidentiary documents.” Therefore, in deciding the motion for summary judgment, the court disregards any facts, whether asserted by Plante or Hinckley Allen, which are not properly supported by or reasonably inferred from appropriate references to the record. For this reason, the motion to strike will be ALLOWED as to all unsupported statements of material fact.[1]
G. Immaterial Facts
Finally, Hinckley Allen argues that Plante sets forth facts which are not material to the court’s resolution of the motion for summary judgment and that, as a result, this information should be stricken from the record. According to Hinckley Allen, these immaterial facts consist of “recitations of the work he was instructed to perform by [it] with respect to the alleged pornography, almost one year prior to his execution of the [separation and release agreement] and his conclusions regarding that work, as well as allegedly ‘defamatory’ statements made by [Hinckley Allen] partners months after he executed the Agreement.” Plante contends that “[a]ll of the statements about the pornography issue are relevant to Plante’s claim of wrongful termination, and statements about the stress and inner turmoil that this conflict caused Plante are material to his defense, lack of capacity, to enforcement of the [separation and release agreement].”
Although Plante’s claim for wrongful termination is not at issue in the motion for summary judgment, his statements about his inner turmoil and the stress that was caused by his disagreement with Hinckley Allen’s partners over the erasure of the pornographic images provides context for his alleged mental deterioration and are material to determining his state of mind, i.e., capacity, at the time he signed the separation and release agreement. The statements regarding defamatory remarks made by Hinckley Allen’s partners, months after Plante signed the separation and release agreement, however, are not material to determining his capacity to contract. For this reason, Hinckley Allen’s motion to strike will be DENIED as to the statements pertaining to the pornography issue and the struggle between Plante and Hinckley Allen’s partners with respect to that issue, but ALLOWED as to the statements involving defamatory remarks made by Hinckley Allen’s partners.
II. Motion for Summary Judgment
Under the established standard, summary judgment will be granted where, viewing the evidence in the light most favorable to the non-moving party, all material facts have been established, and the moving party is entitled to judgment as a matter of law. Cabot Corp. v. AVX Corp., 448 Mass. 629, 636-37 (2007). “The moving party must establish that there are no genuine issues of material fact, and that the nonmov-ing party has no reasonable expectation of proving an essential element of its case.” Miller v. Mooney, 431 Mass. 57, 60 (2000). When the moving party does not bear the burden of proof at trial, it is entitled to summary judgment either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of its case. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
Here, Hinckley Allen moved for summary judgment to establish that the separation agreement and release signed by Plante is effective and bars his wrongful termination claim. In his amended complaint, Plante offers three defenses against the agreement’s enforceability: (1) that he signed it under duress, (2) that O’Donnell exerted undue influence on Plante in encouraging his agreement, and (3) that it is void on public policy grounds. Plante also alleges that the agreement is void because he lacked the capacity to agree to it. Hinckley Allen maintains that Plante has failed to produce sufficient evidence supporting these arguments to withstand a motion for summary judgment. Each will be considered in turn.
A. Duress
A contract entered into under duress is voidable. Cabot Corp. v. AVX Corp., 448 Mass. 629, 637 (2007). “To show economic duress (1) a party must show that he has been the victim of a wrongful or unlawful act or threat, and (2) such act or threat must be one which deprives the victim of his unfettered will, resulting in the threatened party being compelled to make a disproportionate exchange of values.” Id. (citations and internal quotation marks omitted).
As Hinckley Allen correctly points out, Plante has not identified any evidence that he was threatened or that the firm committed any wrongful or unlawful act constituting duress. In general, the stresses resulting from the end of employment cannot constitute wrongful acts or threats sufficient to give rise to a duress defense. See Melanson v. Browning-Ferris Industries, Inc., 287 F.3d 272, 277 (1st Cir. 2002) (“To hold otherwise would be to make it virtually impossible for employers and employees to enter into binding settlements of employment disputes occasioned by job losses, lay-offs and the like”). Because, even when taking the evidence in the light most favorable to Plante, he cannot establish that he signed the agree *268 ment under duress, Hinckley Allen is entitled to summary judgment precluding this defense.
B. Undue Influence
“One who signs a writing that is obviously a legal document is presumed to be fully aware of its terms, unless it can be proved that he was induced to sign it by fraud or undue influence.” Bruno v. Bruno, 10 Mass.App.Ct. 918, 918 (1980) (rescript), affirmed, 384 Mass. 31 (1981). “Undue influence is whatever destroys free agency and constrains the person whose act is under review to do that which is contrary to his own untrammeled desire.” Id. (citations and internal quotation marks omitted). Under Massachusetts law, there are two types of undue influence: (1) “unfair persuasion of one party under the domination of another” and (2) “unfair persuasion in the context of a confidential relationship.” Bruno, 384 Mass. at 34. “Whatever may be the particular form, however, in all cases of this character three factors are implied: (1) a person who can be influenced, (2) the fact of deception practised (sic) or improper influence exerted, [and] (3) submission to the overmastering effect of such unlawful conduct.” Neill v. Brackett, 234 Mass. 367, 370 (1920).
Applying Neill, as is discussed below, Plante produced evidence that he was suffering from a mental condition, and therefore could establish that he was susceptible to influence. Additionally, if there was “unlawful conduct,” it was effective; he signed the agreement. At issue here, is whether Hinckley Allen, through its agents, practiced deception or exerted improper influence on Plante in encouraging him to sign the agreement.
The only evidence that Plante has produced supporting the improper pressures exerted, demonstrates that Grimm and O’Donnell encouraged him to sign the agreement. Cf. Butler v. Gleason, 214 Mass. 248, 251-52 (1913) (contrasting undue influence with mere encouragement). “Undue influence is that which ‘destroys free agency and constrains the person whose act is under review to do that which is contrary to his own untrammelled desire.’ ” Collins v. Huculak, 57 Mass.App.Ct. 387, 394 n.8, quoting Neill, 234 Mass. at 369. Encouragement or urging, without anything more, is insufficient to give rise to undue influence.
Plante argues that this encouragement had great force, and fits into the second category of undue influence as described in Bruno, because of his supposed special relationship with Grimm and O’Donnell. Specifically, because Plante had relied on them for advice in the past, he argues that their relationship became fiduciary in nature transforming their advice into an undue influence.
In support, Plante cites Reed v. A.E. Little Co., 256 Mass. 442, 449 (1926), for the proposition that “[w]hen confidence is reposed and accepted, the person trusted is liable for . . . concealing facts which by reason of the relationship he should disclose.” Plante argues that Grimm and O’Donnell concealed some adverse legal effects of the agreement. This argument is unsupportable. No fiduciary relationship, attorney-client or otherwise, was created by virtue of Plante’s friendship and occasional requests for advice from Grimm and O’Donnell.
Under the doctrine of undue influence, the confidential relationships include those such as “husband-wife, parent-child, trustee-beneficiary, attorney-client, clergyman-parishioner, and others.” Howard J. Alperin, Summary of Basic Law, §5.46 (4th ed. 2006). The relationship between former employer and employee or friends is insufficient. Plante has not produced any evidence that his relationship with Grimm or O’Donnell was fiduciary. Therefore, Hinckley Allen is entitled to summary judgment precluding an undue influence defense.
C. Plante’s Incapacitation
Under two sets of circumstances, a contract may be voided because a contracting party lacked the requisite mental capacity. In the first situation, a contract is voidable unless the party possesses “an ability to comprehend the nature and quality of the transaction, together with an understanding of its significance and consequences.” Farnum v. Silvano, 27 Mass.App.Ct. 536, 538 (1989). In the second situation, “a contract may ... be voidable by reason of failure of will or judgment, where the person contracting, by reason of mental illness or defect, is unable to act in a reasonable manner in relation to the transaction and the other party has reason to know of his condition.” Krasner v. Berk, 366 Mass. 464, 468 (1974).
It is important to remember that summary judgment is not an opportunity for a judge to decide disputed questions; the judge’s task is not to assess credibility. “The duty of a trial judge ... on a motion for summary judgment is not to conduct a trial by affidavits (or other supporting materials), but to determine whether there is a substantial issue of fact.” Henshaw v. Cabeceiras, 14 Mass.App.Ct. 225, 229 (1982) (internal quotation marks omitted). In this case, genuine issues exist both as to whether Plante could comprehend the agreement when he signed it or whether he was able to act reasonably in relation to signing it and whether Hinckley Allen was aware of his inability to do so.
Regarding the first situation, Plante’s expert, Dr. Brown concluded that Plante “could not intelligently evaluate [the agreement’s] merits due to his unraveling mental status and acute psychological instability.” Further, Plante signed the agreement “without knowingly, voluntarily and intelligently understanding the implications of his actions . . . [He] was taking a number of psychotropic medications that did not effectively alleviate or diminish his debilitating psychological symptoms which ultimately led to his psychiatric hospitalization [two] days later.” If a juiy believed this expert, it could conclude that Plante did not understand the agreement when he signed it. Matters of credibility are left to the jury.
*269 Furthermore, from this evidence a juiy could conclude that Plante did understand the agreement, but because of his psychological state he was unable to act reasonably in signing it. Moreover, the jury could conclude that Plante’s request for sick leave instead of termination coupled with his discussions with O’Donnell about entering a residential treatment facility was sufficient to put Hinckley Allen on notice of his condition.
Hinckley Allen presented evidence from its own expert contradicting Dr. Brown’s conclusions. Even if this court considered that expert more credible and better credentialed, Dr. Brown’s affidavit and report are sufficient to raise a genuine issue of material fact as to whether the contract is voidable due to Plante’s incapacitation. It is this evidence alone preventing this court from ordering complete summary judgment in Hinckley Allen’s favor. In light of Dr. Brown’s report, it would be inappropriate to award Hinckley Allen summary judgment precluding Plante’s argument that he was incapacitated when he signed the agreement.
D. General Effect of the Release and Public Policy Concerns
Hinckley Allen has also moved for summary judgment seeking a determination that the release bars Plante’s claims for wrongful termination as a matter of law. As a matter of public policy, Massachusetts generally favors enforcing releases. Sharon v. City of Newton, 439 Mass. 99, 105 (2002). In determining whether a particular release is valid, general contract principles apply. See Horner v. Boston Edison Co., 45 Mass.App.Ct. 139, 141-45 (considering whether a release violated public policy, was unconscionable, misrepresented, ambiguous, barred by another agreement, or signed under duress).
The agreement states, in relevant part, that Plante “waives, relinquishes, and releases [Hinckley Allen] from any and all rights or claims that he might have arising out of his employment with [it] and the termination of that employment for any and all reasons ... The [e]mployee waives any rights or claims he may have under the U.S. Civil Rights Act of 1964, the Americans with Disabilities Act, the Family and Medical Leave Act, Massachusetts G.L.c. 151B . . . or any other similar federal or state law or local ordinance.”
Although relevant only as a persuasive and non-binding authority, the First Circuit of the United States Court of Appeals has held that a party must knowingly and voluntarily agree to a release. Rivera-Flores v. Bristol-Myers Squibb Caribbean, 112 F.3d 9, 12 (1st Cir. 1997). This determination is made by considering the totality of the circumstances. Toward this end, the First Circuit delineated six specific factors to consider: “(1) plaintiffs education and business sophistication; (2) the respective roles of employer and employee in determining the provisions of the waiver; (3) the clarity of the agreement; (4) the time plaintiff had to study the agreement; (5) whether plaintiff had independent advice, such as that of counsel; and (6) the consideration for the waiver.”
If the agreement is not barred due to Plante’s mental incapacitation, then it is enforceable. Plante has no other remaining contract defenses to its enforcement. Further, employing the Rivera-Flores analysis, considering the totality of the circumstances, no reasonable juiy could find that that the agreement was not valid. Plante was an attorney with a decade’s experience. He signed this clear agreement after having significant time to consider it; Hinckley Allen set no deadline for his agreement. There was also valid consideration for the agreement. Assuming for purposes of the present analysis that Plante possessed the mental capacity to enter into it, the only factor weighing against the release’s enforcement is Plante’s decision to represent himself. This, as a matter of law, is insufficient to raise a genuine issue as to its enforceability. Therefore, if the finder of fact determines that Plante possessed the requisite mental capacity to enter into the agreement, no other defense to its enforcement remains and judgment should enter for Hinckley Allen as a matter of law on Plante’s wrongful termination count.
III. Motion to Dismiss Counterclaim
Plante has moved to dismiss the entire counterclaim.
When evaluating the sufficiency of a complaint or counterclaim under Mass.RCiv.P. 12(b)(6), the court accepts as true its factual allegations and draws all reasonable inferences in favor of the plaintiff, or in this case, the plaintiff-in-counterclaim. Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008). To survive a motion to dismiss, a complaint must contain factual allegations which, if true, raise a right to relief above the speculative level. Mere labels and conclusoiy allegations will not suffice. Rather, a complaint must allege facts “plausibly suggesting (not merely consistent with) an entitlement to relief.” Id, (internal quotation marks omitted).
Plante has moved to dismiss each of the four counts in the counterclaim.
A. Breach of the Separation Agreement
In its counterclaim, Hinckley Allen alleges that by signing the agreement, Plante promised not to sue it in exchange for severance pay and benefits following his termination. Plante then filed a charge of discrimination and complaint with the Massachusetts Commission against Discrimination as well as the instant suit. Concerning damages, Hinckley Allen alleged that “[a]s a direct result of Plante’s breaches of the [agreement, [it] suffered damages, including ... all the expenses that have been and will be incurred in defending against Plante’s claims.”
Plante argues that count should be dismissed because it seeks, inter alia, attorneys fees. In general, “[for a breach of [one’s] covenant not to sue[,] [the person suing] becomes liable for the damages suffered by the one to whom the covenant was given.” Matheson v. O’Kane, 211 Mass. 91, 94 (1912). Part of the damages that Hinckley Allen alleges it suffered due to Plante’s breach of the agreement is the attorneys fees *270 it spent defending his suit. Hinckley Allen did not allege that it is entitled to recover attorneys fees for its counterclaim; rather only those damages it suffered because Plante breached the release. Its claim for breach of the agreement and release can continue.
B. Intentional and Negligent Misrepresentation
Hinckley Allen also alleged that Plante misrepresented his reasons for leaving his prior jobs on his employment application with it. Specifically, it claims he falsely stated that he left previous jobs because of a geographic move and because he was considering employment with Hinckley Allen. Hinckley Allen further alleges that unsatisfactory work performance contributed to these departures. It alleged that Plante knew, or should have known, that his representations were false, that the truthfulness of these representations was material, intended Hinckley Allen to rely on the representation, and that Hinckley Allen suffered damages from relying on these representations.
To survive a motion to dismiss a claim for intentional misrepresentation, Hinckley Allen must plead that (1) Plante made a false representation of material fact, (2) knowing the representation was false, (3) for the purpose of causing Hinckley Allen to act in reliance on the misrepresentation, and (4) Hinckley Allen justifiably relied on the misrepresentation (5) to its detriment. Graphic Arts Finishers v. Boston Redevelopment Authority, 357 Mass. 40, 44 (1970), quoting Restatement (Second) of Torts §525. The requirements for negligent misrepresentation are the same, except Plante need not know the representation was false, Hinckley Allen must only allege that he failed to exercise reasonable care or competence in obtaining or communicating the information. Nota Construction Corp. v. Keyes Associates, Inc., 45 Mass.App.Ct. 15, 19-20 (1998).
Plante proposes a number of arguments for why these claims fail. First, he claims that his statements were true or were “non statements.” The purpose of a motion under Mass.R.Civ.P. 12(b)(6) is not to determine the truthfulness of the complaint’s allegations, but rather their sufficiency; the allegations are presumed true. Thus, Plante’s argument that the allegations are false is inapposite at this time.
Next, Plante argues that Hinckley Allen did not allege reasonable and justifiable reliance. To the contrary, Hinckley Allen alleged that it relied on these statements when it hired, trained, and relied on Plante as its employee. Likewise, its allegation that this reliance caused it damage is plausible. This is sufficient to withstand a motion to dismiss under Mass.R.Civ.P. 12(b)(6). See Warner-Lambert Co. v. Execuquest Corp., 427 Mass. 46, 48 (1998).
C. Breach of Privilege Policy
Finally, Hinckley Allen alleges that Plante agreed to, and breached, its policy concerning disclosure of confidential information. Specifically, the policy stated “(n]o information regarding [Hinckley Allen] or its client should be disclosed to anyone not authorized to receive such information.” Hinckley Allen alleges that Plante disclosed confidential information to a newspaper, the Massachusetts Lawyers Weekly. In support of this allegation, it identified articles where Plante was quoted discussing the instant litigation and his claim that he was fired because he refused to delete child pornography from a client’s computer. While, as Plante argues, these allegations might not be sufficient to show wrongdoing under the Massachusetts Rules of Professional Conduct, they are sufficient to bring a claim for breach of contract. Hinckley Allen has alleged that Plante disclosed information regarding the firm or one of its clients. Plante’s motion must be DENIED.
ORDER
For the reasons explained above, it is hereby ORDERED that the Hinckley Allen’s motion to strike is:
1. ALLOWED as to (a) any statements in which Plante states a conclusion as to his specific diagnoses; (b) any statements which reference a quid pro quo allowing Plante to resign in exchange for signing the separation and release agreement; (c) any statements unsupported by the record; (d) and any statements regarding defamatoiy remarks made by Hinckley Allen’s partners about Plante after he signed the separation and release agreement; but
2. DENIED as to: (a) Plante’s certified medical records; (b) Dr. Brown’s Evaluation; (c) statements by individuals Plante was acquainted with through the recovery program; (d) statements by hospital personnel Plante had contacted about in-patient psychiatric treatment; (e) statements by individuals who visited Plante while he was hospitalized; (f) statements by Dr. Robert Smith; and (g) statements pertaining to the pornography issue and the struggle between Plante and Hinckley Allen regarding this issue.
Hinckley Allen’s motion for summary judgment is:
1. ALLOWED so as to preclude Plante’s argument that he signed the agreement because of duress or undue influence;
2. ALLOWED so as to establish the release’s enforceability if the finder of fact determines that Plante possessed the mental capacity to enter into the agreement; and
3. otherwise DENIED.
Plante’s motion to dismiss the counterclaim is DENIED.

The court notes, however, that in deciding a motion for summary judgment, it views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in his favor. Jupin v. Kask, 447 Mass. 141, 143 (2006), citing Coveney v. President and Trustees of the College of the Holy Cross, 388 Mass. 16, 17 (1983). Thus, although the court does not accept unsupported evidence, Plante is permitted to identify and argue in favor of certain inferences that can be drawn from the undisputed facts.