## GUARDIANSHIP OF MARY MOE.[1]

No. 12-P-18.

Norfolk. January 10, 2012. - January 17, 2012.

Present: GRAINGER, SIKORA, & HANLON, JJ.

*Abortion. Probate Court,* Incompetent person. *Guardian,* Incompetent person. *Incompetent Person,* Sterilization.

Reversal was required of so much of an order entered by a Probate and Family Court judge as directed the sterilization of a thirty-two year old woman, the parents of whom the judge had appointed as guardians for the purpose of consenting to an abortion procedure, where the judge, in ordering sterilization sua sponte and without notice, failed to provide the basic due process that is constitutionally required. [139-140]

A probate judge's order appointing the parents of a thirty-two year old woman as her guardians for the purposes of consenting to an abortion procedure was required to be vacated, where, although the judge's finding of incompetency was supported by the record [140], the judge's issuance of the order without a hearing and without any findings to support the failure to conduct a hearing did not comply with the requirements of substituted judgment under G. L. c. 190B, § 5-306A [140-141].

PETITION filed in the Norfolk Division of the Probate and Family Court Department on October 25, 2011.

A proceeding to appoint a guardian ad litem to dispense with consent to abortion was had before *Christina L. Harms,* J.

*Jeffrey J. Isaacson* for Department of Mental Health.

*Douglas Charles Boyer* for Mary Moe.

GRAINGER, J. Mary Moe appeals from an order by a judge of the Probate and Family Court Department appointing her parents as guardians for the purpose of consenting to the extraordinary procedures of abortion and sterilization. For the reasons stated herein, we reverse in part, vacate in part and remand the matter for further proceedings.

[1]A pseudonym. See G. L. c. 112, § 12S.

1. *Background.* The facts are undisputed. Moe, thirty-two years old, is mentally ill, suffering from schizophrenia or schizo-affective disorder and bipolar mood disorder. Moe is pregnant, although the record is unclear how long she has been pregnant.[2] She has been pregnant twice before. On the first occasion she had an abortion, and on the second she gave birth to a boy who is in the custody of her parents. At some point in the time period between her abortion and the birth of her son, Moe suffered a psychotic break, and has been hospitalized numerous times for mental illness.

The Department of Mental Health (department) filed a petition seeking to have Moe's parents appointed as temporary guardians for purposes of consenting to an abortion. A probate judge appointed counsel for Moe and conducted a hearing at which Moe, her court-appointed attorney, and counsel for the department were present. At the hearing Moe was asked about an abortion and replied that she "wouldn't do that." Moe also asserted that she was not pregnant and that she had met the judge before, although according to the judge, she and Moe had never met. Moe also erroneously stated that she had previously given birth to a baby girl named Nancy.[3]

Based on "several and substantial delusional beliefs," the judge found Moe incompetent to make a decision about an abortion. The judge appointed a guardian ad litem (GAL) to investigate the issue of substituted judgment, G. L. 190B, § 5-306A, and to submit a written report.[4] Additionally, at the request of Moe's counsel, the judge authorized funds for an expert to investigate and submit a report on the necessity of the proposed abortion and to provide expert testimony. However, no subsequent hearing was held, and no testimony or report from the expert was received by the judge or the parties.

The GAL submitted a report noting the following. In October of 2011, Moe visited a hospital emergency room, where a test

[2]The parties estimate that Moe may be up to five months pregnant.

[3]As stated, Moe has never given birth to a girl; her only child is a boy.

[4]The judge also appointed a second GAL to oppose the recommendation by the first GAL if the first GAL concluded that Moe would choose an abortion if she were competent. See *Matter of Jane A.*, 36 Mass. App. Ct. 236, 237 n.1 (1994). Because the first GAL concluded that Moe would not choose an abortion, the requirement of a second GAL report was not triggered.

found that she was two to three months pregnant.[5] A consultation was ordered to determine the effect on the fetus of the medication used to treat Moe's mental illness. The consulting physician determined that the risk of stopping that medication while Moe was pregnant was higher than simply continuing the medication. See note 7, *infra*.

The GAL report and the record generally provide additional background. The defendant suffered a psychotic break when she was a college student. Thereafter, she believed people were staring at her and stating that she killed her baby. She becomes agitated and emotional when discussing the pregnancy that ended in an abortion. Consistent with denying that she is now pregnant, she refuses obstetrical care and testing.

Moe also states that she is "very Catholic," does not believe in abortion, and would never have an abortion. Her parents, however, have stated that she is not an "active" Catholic. Moe's parents believe that it is in the best interests of their daughter to terminate her pregnancy. After investigating these facts and Moe's desires, the GAL concluded on a substituted judgment analysis that Moe would decide against an abortion if she were competent.

Without conducting a hearing, the judge concluded to the contrary, notwithstanding Moe's expressed preferences and the recommendations[6] of the GAL. Specifically, the judge "[credited] the facts as reported by the GAL," but found them "inconclusive." The judge reasoned instead that if Moe were competent, she "would not choose to be delusional," and therefore would opt for an abortion in order to benefit from medication that otherwise

---

[5]Moe visited the emergency room on or about October 15, 2011. The department filed a guardianship petition reasonably promptly thereafter, on October 24, 2011. However, a hearing on the petition was not held until December 8, 2011, and the judicial finding of incompetence was issued on December 9, 2011. The order granting a guardianship for purposes of consenting to abortion and sterilization was not issued until January 6, 2012. Consequently a pregnancy that was diagnosed at approximately ten weeks was ordered terminated at approximately twenty-one weeks. See G. L. c. 112, §§ 12L, 12M.

[6]We do not intend to imply that the role of the GAL is binding or greater than to make "recommendations to the court." G. L. c. 190B, § 5-106(*b*). See Minehan & Kantrowitz, Mental Health Law § 10.18 (2007) (GAL's role is to "assist the court in conducting an independent investigation").

could not be administered due to its effect on the fetus.[7] The judge ordered that Moe's parents be appointed as coguardians and that Moe could be "coaxed, bribed, or even enticed . . . by ruse" into a hospital where she would be sedated and an abortion performed.

Additionally, sua sponte, and without notice, the judge directed that any medical facility that performed the abortion also sterilize Moe at the same time "to avoid this painful situation from recurring in the future."

Moe appealed to the single justice of this court. Because the appeal was from a final order, we transferred the case to a panel of the court.

2. *Discussion.* "[T]he personal decision whether to bear or beget a child is a right so fundamental that it must be extended to all persons, including those who are incompetent." *Matter of Mary Moe,* 31 Mass. App. Ct. 473, 477 (1991), quoting from *Matter of Moe,* 385 Mass. 555, 563-564 (1982).[8] Because of the fundamental nature of this right, in deciding whether a guardian may consent to an abortion or sterilization on behalf of the incapacitated person, we apply the doctrine of substituted judgment. See *Matter of Moe,* 385 Mass. at 565; *Superintendent of Belchertown State Sch.* v. *Saikewicz,* 373 Mass. 728, 751-752 (1977); G. L. c. 190B, § 5-306A.

a. *Sterilization.* Because sterilization is the deprivation of the right to procreate, it is axiomatic that an incompetent person must be given adequate notice of the proceedings, an opportunity to be heard in the trial court on the issue of the ability to give informed consent, a determination on the issue of substituted judgment if no such ability is found, and the right to appeal. See *Matter of Moe,* 385 Mass. at 566. "[P]ersonal rights implicated in . . . petitions for sterilization require the judge to exercise the *utmost care* . . . . The judge must enter detailed written findings indicating those persuasive factors that determine

---

[7]In fact and as stated, the medical report does not support such a determination unequivocally. Rather, in the apparent context of Moe's pregnancy, the reporting psychiatrist stated that the "risk of medicating this patient is much lower than that of withdrawing medication."

[8]For clarity we refer to the Supreme Judicial Court decision as *Matter of Moe* and to the Appeals Court decision as *Matter of Mary Moe.*

the outcome" (Emphasis added.) *Id.* at 572. In ordering steriliza-
tion sua sponte and without notice, the probate judge failed to
provide the basic due process that is constitutionally required
under the Fourteenth Amendment to the United States Constitu-
tion. We reverse the order directing Moe's sterilization.

b. *Abortion.* (i) *Incompetency.* "When the findings do not
justify the ultimate conclusion, an appellate court may examine
the record to see if there are elements of uncontested evidence
that would assist resolution of the question to be decided." *Mat-
ter of Jane A.*, 36 Mass. App. Ct. 236, 240 (1994), citing *Bruno*
v. *Bruno*, 384 Mass. 31, 35-36 (1981). The judge relied on
several undisputed facts to determine that Moe was incompetent
to decide whether to abort the fetus. Our examination of the
record reveals only one finding that provides evidentiary sup-
port for the judge's determination. Specifically, the fact that
Moe denied her pregnancy entitled the judge to infer an in-
ability to confront the issue in a realistic manner. The other
facts on which the judge relied — that Moe believed she had a
daughter or that she had previously met the judge — do not
support a determination of incompetency on the issue whether
to terminate her current pregnancy. "A person may be adjudicated
legally incompetent to make some decisions but competent to
make other decisions." *Matter of Moe*, 385 Mass. at 567-568.[9]
While the judge's finding that Moe does not have the capacity
to decide whether to have an abortion is not necessarily one we
might have made as a trier of fact, it has support in the record.
*Matter of Mary Moe*, 36 Mass. App. Ct. at 480 (appellate court
reviews decision on competency to consent to abortion to ascer-
tain if trial judge's decision supported by record).

(ii) *Substituted judgment.* Assuming that Moe is incompetent
to decide whether to terminate her pregnancy, the substituted
judgment standard applies. G. L. c. 190B, § 5-306A. That
standard requires a determination whether Moe would decide to
bring the fetus to term if she were competent. See *Matter of
Moe*, 385 Mass. at 565. "In utilizing the doctrine [of substituted
judgment,] the court does not decide what is necessarily the
best decision but rather what decision would be made by the

[9]The parties do not contest Moe's incompetence in connection with the
need for guardianship generally.

incompetent person if he or she were competent. 'In short if an individual would, if competent, make an unwise or foolish decision, the judge must respect that decision,' " assuming the judge were required to respect the same decision by a competent person. *Ibid.*, quoting from *Guardianship of Roe*, 383 Mass. 415, 449 n.20 (1981).

In this context the law requires an evidentiary hearing or, failing that, a finding that "extraordinary circumstances [exist] requiring the absence of the incapacitated person." G. L. c. 190B, § 5-306A(*d*), inserted by St. 2008, c. 521, § 9. The judge's findings may, however, be based exclusively on "affidavits and other documentary evidence" if the judge makes an additional finding, based on representation of counsel, that there are no contested issues of fact. *Ibid.* The order here, issued without a hearing and without any findings to support the failure to conduct a hearing, did not comply with the conditions for its issuance established by law.

We note as well that Moe' s "actual preference 'is an important part of the substituted judgment determination.' " *Matter of Mary Moe*, 31 Mass. App. Ct. at 477-478, quoting from *Matter of Moe*, 385 Mass. at 570. As stated, Moe has consistently expressed her opposition to abortion, and the GAL report concludes that she would continue to do so if she were competent.

3. *Conclusion.* We reverse that portion of the order requiring sterilization of Moe. No party requested this measure, none of the attendant procedural requirements has been met, and the judge appears to have simply produced the requirement out of thin air.

We vacate that portion of the order requiring Moe to undergo an abortion. We remand the case for a proper evidentiary inquiry and decision on the issue of substituted judgment. The record indicates that a determination should ensue with all possible speed before a different judge, and that such a determination will benefit from an immediate examination establishing the viability and status of the pregnancy.

We vacate that portion of the order insofar as it makes the appointment of the parents as guardians conditional on the need for them to approve an abortion (which issue is now subject to the preceding paragraph), and the order shall be modified to

allow their appointment for general purposes relating to Moe's routine medical care, health and welfare, including, as appropriate, the duration, condition, and viability of her pregnancy.

*So ordered.*